## No. 23-30671

## In the United States Court of Appeals
## For the Fifth Circuit

In re: Claude F. Reynaud, III,
*Appellant*

On Appeal from United States District Court
for the Western District of Louisiana

## BRIEF OF APPELLANT CLAUDE REYNAUD

Submitted By:

Scott M. Galante
State Bar No. 26890
scott@galantelitigation.com
William M. Ross
State Bar No. 27064
billy@galantelitigation.com
The Galante Litigation Group, LLC
816 Cadiz Street
New Orleans, LA 70115
(504) 203-5010 (office)
(504) 203-5011 (facsimile)
Counsel for Appellant

# CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Fifth Circuit Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this court may evaluate possible disqualification or recusal.

**Respondent-Appellant**

Claude F. Reynaud, III

**Counsel for Respondent-Appellant**

Scott M. Galante
William M. Ross
The Galante Litigation Group
816 Cadiz Street
New Orleans, Louisiana 70115

/s/ Scott M. Galante

Counsel of Record for Respondent-Appellant

# STATEMENT REGARDING ORAL ARGUMENT

This appeal arises from disciplinary proceedings against Claude F. Reynaud, III, a Louisiana lawyer, instituted *sue sponte* by the district court. There accordingly is no appellee or other opposing party to submit an opposing brief in this Court. In the light of that circumstance, and pursuant to Fifth Circuit Rule 28.2.3, Mr. Reynaud respectfully suggests that an opportunity to present oral argument and respond to any questioning may assist this Court with adjudicating this matter.

ii

# TABLE OF CONTENTS

Contents                                                                     Page(s)

CERTIFICATE OF INTERESTED PERSONS ..........................................i

STATEMENT REGARDING ORAL ARGUMENT ..................................ii

TABLE OF CONTENTS ........................................................................ iii

TABLE OF AUTHORITIES....................................................................1

JURISDICTIONAL STATEMENT ..........................................................2

STATEMENT OF THE ISSUES...............................................................3

STATEMENT OF THE CASE ................................................................3

   I.  Mr. Reynaud was a foot soldier at MMA who worked for the good of the firm's clients. ................................................................................3

   II.  Mr. Reynaud saved claims when confronted with an urgent situation not of his making. ..................................................................6

   III.  Mr. Reynaud was in the midst of departing MMA when he was first suspended without a hearing. .........................................................7

   IV.  Mr. Reynaud was suspended from the Western District for an additional nine months, again without a hearing. ..............................10

   V.  After a belated hearing and without assigning reasons, the district court declined to lift Mr. Reynaud's suspension. .....................11

SUMMARY OF THE ARGUMENT .........................................................13

STANDARD OF REVIEW.........................................................................15

ARGUMENT .........................................................................................15

  I.  The Western District deviated from its own Local Rules. .............15

  II. Mr. Reynaud has been denied due process. ..................................17

    A.   The legal standards. ..................................................................17

    B.   Mr. Reynaud did not receive adequate notice of the allegations against him and still has not received notice of the basis of the nine-month suspension..............................................................................19

CONCLUSION .....................................................................................21

CERTIFICATE OF SERVICE..............................................................22

CERTIFICATE OF COMPLIANCE.......................................................22

# TABLE OF AUTHORITIES

## Cases

*City of West Covina v. Perkins*, 119 S.Ct. 678 (1999) .............................21

*Collier v. Washington*, 551 B.R. 249 B.R. 249 (W.D. La. 2016)..............20

*Greene v. McElroy*, 79 S. Ct. 1400 (1959)................................................20

*In re Grodner*, 2014 WL 4365080 (M.D. La. Sept. 2, 2014)....................21

*In re Marshall*, 2016 WL 81484 (M.D. La. Jan. 6, 2016)........................22

*In re Sealed Appellant*, 194 F.3d 666 (5th Cir 1999).................. 18, 20, 22

*In re Thalheim*, 853 F.2d 383 (5th Cir. 1988)............................ 18, 19, 21

## Statutes

28 U.S.C. § 1291 ......................................................................................5

## Rules

Fifth Circuit Rule 28 .............................................................................1, 2

Federal Rule of Civil Procedure 11 .....................................................6, 10

W.D. La. LR 83. ................................................................... 11, 12, 19

# JURISDICTIONAL STATEMENT

Below, the district court *sua sponte* opened a docket captioned *In Re: McClenny Moseley & Associates PLLC*, as a sort of disciplinary proceeding against the Respondent-Appellant, Claude F. Reynaud, III, and various other lawyers who currently or formerly practiced at that law firm. Mr. Reynaud contests a ruling by the district court declining to vacate his nine-month suspension from the practice of law in the Western District of Louisiana that has been imposed in that proceeding.[1]

The Court has jurisdiction over this appeal pursuant to 28 U.S.C. § 1291 because the Ruling is final as to Mr. Reynaud. The district court Ruling was entered on August 24, 2023. ROA.471. No motion for new trial or alteration of the Ruling or any other motion that would have tolled the time for Mr. Reynaud to file this appeal was filed. Mr. Reynaud filed a timely notice of appeal on September 22, 2023. ROA.691.

---

[1] In this Court, the matter has been more aptly captioned as *In re: Claude Reynaud*.

# STATEMENT OF THE ISSUES

1. Whether the district court erred by, in violation of its own Local Rules, suspending Mr. Reynaud for an additional nine months without first affording him an opportunity to be heard?

2. Whether the district court denied Mr. Reynaud due process of law by failing to provide adequate notice of the allegations against him and a meaningful opportunity to be heard, and instead grouping Mr. Reynaud together with various other lawyers regarding a host of areas of potential misconduct, not differentiating between the lawyers, holding a hearing after-the-fact, and offering no findings of fact or conclusions of law particularized to Mr. Reynaud in support of the Ruling declining to lift his suspension?

# STATEMENT OF THE CASE

## I.   Mr. Reynaud was a foot soldier at MMA who worked for the good of the firm's clients.

This appeal is an outgrowth of the ongoing saga surrounding the law firm where Mr. Reynaud previously worked, McClenny Mosely & Associates, PLLC ("MMA"). The issues with MMA are many, varied, and intense, and have given rise to lawsuits, administrative action, Rule 11 and other proceedings, and attorney-disciplinary investigations. Here,

Mr. Reynaud challenges the imposition of a suspension imposed by the Louisiana Western District without an advance hearing or the rendition of any factual or legal findings relating to Mr. Reynaud for this Court to review.

Before joining MMA, Mr. Reynaud had an unblemished disciplinary record. ROA.284. His hiring by MMA in September 2021, moreover, marked Mr. Reynaud's first association with a traditional plaintiff's firm or exposure to the plaintiff's side of hurricane litigation. ROA.798. Mr. Reynaud was excited by the opportunity and looked forward to serving the community in a new way. ROA.798. In fact, Mr. Reynaud was the only lawyer in MMA's Louisiana office with his personal cell number listed on the firm's website. ROA.814. It is undisputed that Mr. Reynaud would field calls from clients and assist them as best as he could.[2] ROA.814.

Otherwise, and consistent with management firmwide, Mr. Reynaud occupied a compartmentalized or "siloed" role at MMA. Specifically, and almost exclusively, Mr. Reynaud became involved in a

---

[2] Much has been made of the accusation that clients had trouble reaching lawyers at MMA. A central theme of Mr. Reynaud's argument, however, is that the district court erred by lumping together respondents and areas of concern. This anecdote regarding Mr. Reynaud's cell listing helps to illustrate the dangers of "group discipline."

case only once it was filed and a substantive litigation issue arose; his duties, therefore, included such things as handling discovery, motion practice, and preparing for trial. ROA.285. Without limitation, therefore, Mr. Reynaud was not responsible for MMA's marketing or client acquisition efforts, general correspondence with insurers, hiring estimators, mediations, filing suit in the first instance, handling checks or the disbursement of case proceeds, or maintenance of the trust account. ROA.285; ROA.292-293; ROA.298.

Nor was Mr. Reynaud a true "partner" at the law firm. Despite being identified as such by MMA, the designation was for business-development purposes only. ROA.284. To be sure, Mr. Reynaud never was invited to or attended a partner meeting, held no equity position in MMA, and recently had it told to him that he was paid considerably less than several of MMA's "associates." ROA.799. Mr. Reynaud's supervisor at MMA was R. William Huye, III, the lawyer who managed the firm's Louisiana office. ROA.290.

## II.   Mr. Reynaud saved claims when confronted with an urgent situation not of his making.

As Mr. Reynaud understood it, MMA planned to file its Hurricane Laura and Delta claims mostly in one batch of approximately 100 lawsuits using permissive joinder with Mr. Huye as the lone signatory.[3] ROA.299. That plan changed when the first of these lawsuits, filed on or about August 18, 2022, was rejected with the proviso that each of them needed to be filed separately for an individual plaintiff. ROA.299. Ultimately, after the close of business on Friday, August 19, 2022, with the deadline for Hurricane Laura claims fast approaching, Mr. Huye texted Mr. Reynaud and two other of MMA's Louisiana lawyers advising that it was necessary for them to provide access to their PACER accounts to timely file all complaints. ROA.820-821.

More particularly, Mr. Reynaud was informed that MMA staff members would need to work around-the-clock using all four PACER accounts to make all necessary filings. ROA.288. Otherwise, according to Mr. Huye, a substantial number of client claims would prescribe.

---

[3] Mr. Reynaud's recollection is that MMA filed its lawsuits for Hurricanes Laura and Delta by the prescriptive deadline for Hurricane Laura. This is so, because many clients were affected by both storms, and there was only a relatively small handful of "Delta only" claims.

ROA.288. After he was given express assurances that the information to be alleged in the complaints, *e.g.*, the defendant insurance company, date of loss, loss address, and policy number, was correct to the best of Mr. Huye's knowledge based on information from the client or an insurer, Mr. Reynaud acquiesced. ROA.288.

The assurances about the integrity of the complaint unfortunately proved less than reliable, resulting in the filing of lawsuits that were infirm for one reason or another, such as reportedly suing the incorrect insurer. For his contribution to those occurrences, Mr. Reynaud has been sanctioned repeatedly under Rule 11. Setting that aside, there can be no question that, by allowing use of his PACER account, there are lawsuits still pending or that have since resolved that would have prescribed if Mr. Reynaud had refused to assist when Mr. Huye's plan to file all the lawsuits himself unraveled.

## III.   Mr. Reynaud was in the midst of departing MMA when he was first suspended without a hearing.

Months later, on the Friday before Mardi Gras of this year, the Louisiana Department of Insurance issued a "cease and desist" letter to MMA and its principals and managers—Mr. Huye, Zach Moseley and James McClenny—concerning representations made to insurance

companies about certain of its engagements. ROA.289. Mr. Reynaud began making plans to leave MMA, which plans he discussed with others at Mardi Gras. ROA.289.

Next, in late February 2023, Mr. Reynaud reviewed a transcript from a proceeding in a different federal district court and realized that MMA was facing even more major issues of which he had no prior knowledge. ROA.289. That review caused Mr. Reynaud to accelerate his departure plans by forming a new law firm with another lawyer who planned to leave MMA. ROA.289-290. To that end, articles of organization were attempted to be filed with the Louisiana Secretary of State on or about March 3, 2023. ROA.290. That new law firm, however, never got off the ground.

The following day, on March 4, 2023, a "Memorandum Order" was published *sue sponte* by the Honorable James D. Cain pursuant to Western District LR 83.2.10. ROA.13. The rule permits any judge of the court to suspend any lawyer for up to 90 days without the approval of the

other Article III judges or the chief judge and, apparently, without a hearing.[4] W.D. La. LR 83.2.10(B)(2).

Imposing the maximum allowable sanction under the Local Rule, the district court began by alluding to the "misconduct of attorneys from McClenny Moseley & Associates, PLLC…". ROA.13. From there, the Order made reference to a laundry list of concerns about the "MMA attorneys," including (1) client communication, (2) MMA's manner of retention by clients, (3) the handling of settlement proceeds, (4) MMA's use of an unlicensed "estimator," (5) difficulties with clients terminating the firm, (6) an improper check endorsement, (7) proceedings in the Eastern District of Louisiana, (8) the Department of Insurance "cease and desist" letter, (9) unauthorized settlements, (10) use of a legal marketing firm, (11) documentation of settlement expenses, and (12) duplicate filings, cases against insurers which had issued no policy, and cases filed for plaintiffs who had already settled their claims. ROA.13-15.

---

[4] The Memorandum Order recites that "MMA attorneys" had the opportunity to address the Court's concerns at two hearings and through *in camera* submissions. While those hearings were held to discuss issues relating to MMA's caseload, Mr. Reynaud appeared at only one of them, and they were not surrogates for a hearing pursuant to LR 83.2.10, which, as will be seen, is a prerequisite to a suspension in excess of 90 days. Further, Mr. Reynaud is not entirely certain what *in camera* submissions the Order was referring to, but once more, he was unaware that any such submission by any "MMA attorney" would be used to impose a suspension.

The district court concluded a 90-day suspension was appropriate "for all MMA attorneys who have appeared before the court and for anyone affiliated with that firm." ROA.15. Mr. Reynaud was named in the Order only once, and then only as one of the "MMA attorneys" to whom the suspension applied. ROA.15. Mr. Reynaud resigned from MMA, effective immediately, hours later. ROA.290.

## IV.    Mr. Reynaud was suspended from the Western District for an additional nine months, again without a hearing.

The "Memorandum Order" also indicated that the 90-day suspensions may be extended. ROA.16. On June 8, 2023, the Honorable Terry A. Doughty signed an Order announcing that the Article III judges of the Western District had voted unanimously to further suspend "MMA attorneys." ROA.236. Messrs. Moseley and Huye were suspended for one year, Mr. Reynaud and another MMA attorney were suspended for nine months, and Mr. McClenny and yet another MMA attorney were suspended for six months. ROA.236-237.

Whatever was presented to the Western District judges upon which to base any vote is unknown to Mr. Reynaud. There again was no opportunity for Mr. Reynaud to be heard on the matter before his suspension was extended. Additionally, there are no findings of fact or

law offered in support of the suspensions, either collectively or as to how the district court differentiated between the various respondents. The Order states only that "...this Court continues to find that the suspensions of the MMA attorneys are necessary to protect the interest of clients in the Western District of Louisiana." ROA.236. Why it was considered necessary to further suspend *Mr. Reynaud*, in particular, was not (and still has not been) explained.

## V.   After a belated hearing and without assigning reasons, the district court declined to lift Mr. Reynaud's suspension.

In a backwards fashion, the Order invited the respondent lawyers to request a hearing, but only after the suspensions became effective:

> This Court gives notice to the attorneys of MMA that they may individually request a hearing on these suspensions within 15 days of this Order. Any attorney who does not seek a hearing within the time frame will be deemed to have waived that right *and the extended suspensions are effective as of the date of this Order*.

ROA.236. Emphasis supplied. Nonetheless, Mr. Reynaud and several of the other "MMA attorneys" timely requested to be heard—in essence to lift the suspensions that had already been voted on and placed into effect.

Before the hearing took place, a new issue was injected into the mix. Namely, citing that "additional questions have arisen regarding potential

misconduct," Judge Cain issued an Order to "understand more about the state of the firm's IOLTA account." ROA.270. To that end, Mr. Reynaud and the other lawyers who had requested hearings were ordered to produce information concerning the account.[5] ROA.270-272. Mr. Reynaud was at a loss for how to respond to the Order, and when the issues over the trust account were combined with the issues listed in the Memorandum Order, there were at least 13 areas of potential misconduct for the undifferentiated "MMA attorneys" to deal with.

Four of the hearings, including that of Mr. Reynaud, were held in succession before Judge Cain on a single day, August 8, 2023. Mr. Reynaud testified on his own behalf and, over a relatively short period that afternoon, endeavored to cover quite a few topics. ROA.796-845. Nevertheless, at times during Mr. Reynaud's hearing, the "MMA attorneys" were still discussed as a group. At one point, the district court remarked: "And you know, don't you think some red flags ought to be going up when I'm pointing out to Mr. Huye and you that *y'all* are forging

---

[5] Mr. Huye, who had not requested a hearing, was excluded from that Order, notwithstanding that he managed MMA's Louisiana office.

checks." ROA.828. Emphasis supplied. Because he did no such thing, there is no evidence that Mr. Reynaud ever forged a check at MMA.

After taking the matter under advisement, the district court rendered a one-page Ruling on August 24, 2023, collectively addressing all the post-suspension hearings, which were termed an "appeal" exercise: "The purpose of the hearings was to appeal to the undersigned regarding counsel's suspension from the practice of law in the Western District." ROA.471. With no explanation, the suspension of one of the respondents was slightly reduced. ROA.471. Also with no explanation, the district court left intact the other suspensions, finding "no just cause" to modify them. It is this Ruling that Mr. Reynaud now appeals. ROA.471.

## SUMMARY OF THE ARGUMENT

There are two safeguards that must be observed before a lawyer can be suspended, and the district court observed neither of them. First, as this Court has held, a court simply must follow its own rules. Second, in such a quasi-criminal proceeding, the lawyer is entitled to due process through adequate notice of the allegations against him and a meaningful opportunity to be heard.

As to the initial safeguard, the Western District Local Rules logically require that a hearing be held before issuance of a suspension in the range of nine months. But here, the district court disregarded that rule and worked in reverse by suspending Mr. Reynaud, first, and then, second, offering an opportunity for a hearing essentially to lift or appeal the suspension. An after-the-fact hearing regarding a suspension that has been voted on and become effective is not just cold comfort to Mr. Reynaud. It is a basis upon which the Ruling can and should be reversed.

As to the second safeguard, the district court improvidently grouped 5-6 "MMA attorneys" together in single disciplinary orders with respect to over a dozen areas of potential misconduct without differentiation. As a result, Mr. Reynaud cannot know with certainty even the most basic information about his discipline, including, but not limited to, the nature and extent of the conduct he supposedly committed, the standard by which that alleged conduct was adjudged, and importantly, whether the extension of his suspension is, in reality, a byproduct of being swept up in the chaos surrounding MMA in a "fog of war" type manner. As a further result of this collective treatment, an *adequate* record for this Court to review and use to answer these questions *specifically as to Mr.*

*Reynaud* does not exist. The suspension accordingly can be reversed and vacated on this additional ground.

## STANDARD OF REVIEW

This Court reviews whether an attorney has committed sanctionable misconduct *de novo*, while the imposition of a particular sanction is subject to abuse of discretion. *See, e.g., In re Sealed Appellant*, 194 F.3d 666, 670 (5th Cir 1999). "In attorney suspension and disbarment cases, the charges must be sustained by clear and convincing proof." *In re Thalheim*, 853 F.2d 383, 389 n.9 (5th Cir. 1988) (citations omitted).

## ARGUMENT

### I.    The Western District deviated from its own Local Rules.

The stakes in this matter are high. Disciplinary proceedings like this one involving suspensions from the practice are "quasi-criminal" in nature. *Id.* at 388. This Court in *Thalheim* further instructed that, "When a court undertakes to sanction an attorney for violating court rules, it is incumbent upon the sanctioning court to observe scrupulously its own rules of disciplinary procedure." *Id.* at 390. Respectfully, that is not what happened here—rather, the Local Rules of the Western District were turned on their head.

The proceedings below against Mr. Reynaud were conducted under Western District LR 83.2.10, a purely procedural provision that contains no substantive standard for conduct or sanction. As it relates to this discussion, LR 83.2.10(B)(3) prescribes a sequence for disciplinary proceedings: (1) a referral is made; (2) the Chief Judge or the Chief Judge's designee investigates and determines a recommended action against the attorney; (3) notice and an opportunity to be heard is given to the attorney; (4) the recommended action is presented to the Article III judges of the court; and (5) *then* a majority vote of the Article III judges is taken.

In other words, LR 83.2.10(B)(3) plainly contemplates that the attorney's opportunity to be heard will take place *before* the vote on discipline. That order of proceeding makes perfect sense, considering that the hearing may impact whether a sanction is ordered and, if so, the severity of it. On the other hand, it is easy to see why a "hearing" held after votes have been cast and suspensions are in effect simply is not meaningful. The Western District's material deviation from its rules, *i.e.*, the failure to "scrupulously" observe them, is cause sufficient to reverse the Ruling and vacate Mr. Reynaud's nine-month suspension.

## II.   Mr. Reynaud has been denied due process.

### A.   The legal standards.

There were other fatal infirmities below bearing on due process. Lawyers subject to disciplinary proceedings are entitled to due process with sufficient notice of the allegations against them. *See, e.g., Sealed Appellant*, 194 F.3d at 670. To be sure, the right to engage in a chosen profession is protected by the Fifth Amendment to the U.S. Constitution. *See, e.g., Greene v. McElroy*, 79 S. Ct. 1400, 1411 (1959). Of special relevance to this case, the Western District, itself, has contoured the notice requirement thusly: "…Due Process requires <u>more than just notice of the conduct at issue</u>, but also <u>the particular standard</u> by which his conduct will be assessed and <u>an opportunity to be heard as to that standard</u>." *Collier v. Washington*, 551 B.R. 249 B.R. 249, 254-55 (W.D. La. 2016) (emphasis supplied) (citations omitted). Returning to the point made above, without proper notice, the opportunity to be heard is not "meaningful" and, by definition, fails to satisfy minimum due process safeguards. *City of West Covina v. Perkins*, 119 S.Ct. 678, 681 (1999) (citation omitted) ("A primary purpose of the notice required by Due Process is to ensure that the opportunity for a hearing is meaningful.").

It is also axiomatic that adequate notice and a "meaningful" opportunity to be heard are indispensable to a serviceable appellate record. For instance, in *Thalheim*, and reminiscent of the proceedings in this matter, the district court judge conducted a two-and-half hour hearing, after which a suspension order without findings of fact or conclusions of law was issued. *See Thalheim*, 853 F.2d at 385-86. The suspension was reversed, with this Court remarking that it is "impossible to review the action of the district court without such a finding and clear and convincing evidence to support it." *Id.* at 389. Fostering that aim, the notice in other disciplinary matters has included citation to specific, substantive rules that the lawyer stands accused of violating and additional procedural information. The notice in *In re Grodner*, 2014 WL 4365080 at *2 (M.D. La. Sept. 2, 2014), was described as follows:

> In a detailed Order to Show Cause, the Court recounted the facts previously stated; cited specific locations in the record where Ms. Grodner's objectionable behavior could be found; listed potential bases for sanctions—specifically, violation of this Court's Local Rules and the Louisiana Rules of Professional Conduct—as well as the range of potential sanctions at issue; and laid out the procedures that must be

followed and the legal standard that must be met before sanctions may be imposed.[6]

Similar notices, show cause orders and charging documents fit hand-in-glove with this Court's admonition that, if a sanction is to be imposed, a court should consider the duty violated, the attorney's mental state, the actual or potential injury caused by the attorney's misconduct and the existence of aggravating or mitigating factors." *Sealed Appellant*, 194 F.3d at 673 (citations omitted).

### B.    Mr. Reynaud did not receive adequate notice of the allegations against him and still has not received notice of the basis of the nine-month suspension.

It is rare that a lawyer is suspended without knowing exactly why, but that is the posture of this case. Over a discrete, approximately five-day period when prescription on Hurricane Laura claims was approaching, Mr. Reynaud allowed his PACER credentials to be used to file complaints, some of which were faulty. Mr. Reynaud understands that action is part of this proceeding to some degree (even though he has already been sanctioned pursuant to Rule 11). Beyond that, though, Mr.

---

[6] *See also In re Marshall*, 2016 WL 81484 at *7 (M.D. La. Jan. 6, 2016) (quoting Order to Show Cause with specific references to court rules and the Louisiana Rules of Professional Conduct.

Reynaud repeatedly has been loosely grouped with the other "MMA attorneys" regarding at least 12 additional areas of concern for which he played no role. In brief, therefore, it is impossible for Mr. Reynaud to glean with certainty the basis for the district court's refusal to lift the nine-month suspension imposed following the expiration of the original, 90-day suspension.

More particularly, and again because lawyers and allegations have been lumped together, Mr. Reynaud cannot determine any of the following, all of which are basic to this quasi-criminal proceeding:

- The particularized factual allegations against him, as opposed to any others in the group of "MMA attorneys";

- Whatever the factual allegations may be, whether the Louisiana Rules of Professional Conduct or some other substantive standard is being applied;

- If the Louisiana Rules of Professional Conduct provide the basis for the suspension, the specific Rules that Mr. Reynaud is accused of violating;

- The burden of proof that was utilized;

- Any other duty found to be violated or the mental state ascribed to Mr. Reynaud;

- Whether Mr. Reynaud is being sanctioned for alleged conduct in another forum, such as the Eastern District of Louisiana; or

- Any mitigating or aggravating factors that the district court may have credited to Mr. Reynaud.

Stated differently, in addition to failing to hold a hearing *before* handing down the suspension, the district court did not observe the due process safeguards for which the Constitution and caselaw provide. For the same reasons, it is impossible for this Court to review the propriety of the suspension for lack of a mature record and findings. The Ruling on Mr. Reynaud's nine-month suspension should be vacated, and the suspension should be reversed.

## CONCLUSION

The district court did not adhere to the Western District's Local Rules or the mandates of due process either in suspending Mr. Reynaud or refusing to lift that suspension. This Court should reverse, and the suspension should be vacated.

SUBMITTED BY:

/s/ Scott M. Galante
SCOTT M. GALANTE
WILLIAM M. ROSS
THE GALANTE LITIGATION GROUP, LLC
816 Cadiz Street
New Orleans, LA 70115
Counsel for Appellant

# CERTIFICATE OF SERVICE

This is to certify that the foregoing instrument has been served via the court's ECF filing system in compliance with Rule 25(b) and (c) of the Federal Rules of Appellate Procedure, on November 30, 2023, on all registered counsel of record and has been transmitted to the Clerk of Court.

/s/ Scott M. Galante
Scott M. Galante

# CERTIFICATE OF COMPLIANCE

1.  This document complies with the type-volume limit of FED. R. APP. P. 32(a)(7)(B) because, excluding the parts of the document exempted by FED. R. APP. P. 32(f) and 5th CIR. R. 32.1:  this document contains 3,957 words.

2.  This document complies with the typeface requirements of FED. R. APP. P. 32(a)(5), and 5th CIR. R. 32.1 and the type-style requirements of FED. R. APP. P. 32(a)(6) because: this document has been prepared in a proportionally spaced typeface using Microsoft Word Version 2308 in 14-point font named Times New Roman.

/s/ Scott M. Galante
Scott M. Galante

Dated: November 30, 2023